**Willie Lee ABNEY, et al.,**
**Appellants/Cross–Appellees,**

v.

**DISTRICT OF COLUMBIA,**
**Appellee/Cross–Appellant.**

**Nos. 88–176, 88–209 and 88–211.**

District of Columbia Court of Appeals.

Argued Nov. 15, 1989.
Decided Sept. 28, 1990.

Donna M. Murasky, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the briefs were filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the briefs, for District of Columbia.

Samuel J. Lowe, with whom Philip Stein, Washington, D.C. was on the brief, for Willie Lee Abney.

Susan L. Brackshaw, with whom Bruce A. Fredrickson, Washington, D.C. was on the brief, for Lloyd J. Ratliff.

Before BELSON, STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

An automobile being pursued by a District of Columbia police officer collided with a taxicab driven by plaintiff Abney, in which plaintiff Ratliff was a passenger. Both parties sued the District for consequent injuries. The dispositive issue in this case is whether the District of Columbia is liable to the plaintiffs under a statute waiving immunity for negligent acts by District employees in their operation of vehicles, with the proviso that "in the case of a claim arising out of the operation of an emergency vehicle on an emergency run the District shall be liable only for gross negligence." D.C.Code § 1–1212 (1987). We reverse the judgments in favor of the plaintiffs, and remand for further proceedings.

I

Shortly after midnight on April 28, 1984, Officer Richard Mattiello of the District of Columbia Metropolitan Police Department ("MPD") observed a BMW automobile "behind a vacant house" and off of an alley in an area commonly used for drug transactions. Observing a silhouette, the officer shined a light onto the automobile. The automobile immediately pulled out into the alley and proceeded to depart from the scene. The officer followed the BMW through the alley and to a nearby intersection but did not make any attempt to stop the BMW. As the BMW turned, it side-

swiped an automobile waiting at the intersection. The BMW did not stop but accelerated away from the scene. Witnessing this event, the officer unsuccessfully radioed his dispatcher and then proceeded to follow the BMW at high speed.[1] The BMW travelled for two blocks and then raced through a red light at another intersection, colliding with a taxicab. The collision caused severe injuries to the taxi driver, Abney, and to his passenger, Ratliff.

On February 24, 1986, passenger Ratliff filed suit against, *inter alia*, the District of Columbia, as operator of the Metropolitan Police Department. Ratliff alleged negligence in Officer Mattiello's violation of

general orders, regulations, directions, and statutes of the Metropolitan Police Department and the District of Columbia, including but not limited to, failure to engage and employ all required emergency warning devices on the pursuit vehicle(s), failure to warn innocent third parties in the vicinity of the danger of the pursuit, operating the pursuit vehicle at such excessive speeds that harm to

innocent third parties was likely and foreseeable, and failure to abandon the pursuit when the officer or officers knew or should have known that harm or injury to innocent third parties was likely to occur.

Ratliff also alleged gross negligence in the District's actions, stating that they were "wanton, willful, and in conscious and reckless disregard for the rights and safety of the Plaintiff." On July 9, 1986, the trial court granted Abney's motion to consolidate with Ratliff as a plaintiff in the claims against the District.

At trial, the plaintiffs sought to establish that the officer's pursuit of the BMW after it had sideswiped another car was in violation of District of Columbia Metropolitan Police Department General Order No. 301.3 (effective February 9, 1981) (hereinafter "General Order No. 301.3" or "the Order"), and that the District was therefore negligent or grossly negligent.[2]

The plaintiffs presented the testimony of an expert, who stated that the officer's

---

1. The testimony was conflicting as to whether the officer activated his siren at any time. The instructions to the jury were such, however, that the jury must have concluded that the siren was activated, at least during part of the chase. *See infra* p. 1040.

2. In its pertinent parts, the Order states:

The purpose of this order is to establish the policies and procedures relative to the operations of departmental vehicles as authorized "emergency vehicles", the proper use of emergency warning devices, and the guidelines for initiating and conducting vehicular and fresh pursuits.

. . . .

A. *Definitions.*
1. *Emergency Vehicles*—For the purpose of this order an emergency vehicle is defined as a departmental vehicle equipped with, and actually operating, the below listed warning devices in compliance with the provisions of this order.
   a. Siren.

. . . .

2. *Vehicular Pursuit*—For the purpose of this order a vehicular pursuit is defined as, the pursuit of a vehicle by a departmental vehicle having all warning devices activated, to effect the arrest or prevent the escape of a fleeing law violator.

. . . .

D. *Vehicle Pursuits.*

2. Whenever it becomes evident that unnecessary property damage or injury to citizens or members of the department may result from a vehicular pursuit, that pursuit shall be immediately discontinued.

. . . .

4. *Initiation of Pursuits.*
a. Vehicular pursuits may be initiated by members operating authorized department vehicles after a member has attempted, using appropriate warning devices, from a close proximity, to stop a suspect or known law violator who is already in a vehicle if the violator has:
(1) Indicated by his/her actions that they are aware of the stop attempt.
(2) Disregarded the stop and attempted to flee in a vehicle.

. . . .

5. *Pursuit Policy and Procedures.*
[a.](8) Members shall *immediately* [emphasis in original] discontinue the pursuit and notify the Communication Division whenever conditions exist (e.g., weather conditions, roadway or pavement conditions, rush hour considerations, vehicular and pedestrian traffic congestion, speed of the chase, mechanical handling of the police vehicle, seriousness of the violation or offense) or become such, that further vehicular pursuit would lead a reasonable person to believe that unnecessary property damage or injury to citizens or members of the department may result.

decision to pursue the BMW when he had witnessed the sideswiping violated General Order No. 301.3 and standard police practice. The District sought to rebut this testimony with that of its own expert. The plaintiffs also sought to establish that the officer did not turn on his siren when he chased the BMW following the sideswiping and that this omission also constituted negligence or gross negligence. The jury awarded $500,000 to Abney and $75,000 to Ratliff. This appeal followed.[3]

## II

### A

In an extensive colloquy, counsel and the trial judge considered how to instruct the jury on the issue of whether the officer was operating "an emergency vehicle on an emergency run" when he chased the BMW from the scene of the sideswiping. This consideration was necessary in light of controlling sections of the District of Columbia Code,[4] which provide:

Hereafter the District of Columbia shall not assert the defense of governmental immunity in any suit at law in which a claim is asserted against it for money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the District occurring as the result of the operation by such employee, within the scope of his office or employment, of a vehicle owned or controlled by the District: *Provided, that in the case of a claim arising out of the operation of an emergency vehicle on an emergency*

*run the District shall be liable only for gross negligence.*

D.C.Code § 1–1212 (1987) (emphasis added). The relevant definitional provisions of the statute read:

(4) "Emergency run" means the movement of a District-owned vehicle ... under circumstances which lead the operator ... to believe that such vehicle should proceed expeditiously upon a particular mission or to a designated location for the purpose of dealing with a supposed fire or other emergency, an alleged violation of a statute or regulation, or other incident requiring emergency action....

(5) "Emergency vehicle" means a vehicle assigned:

(A) To the Fire Department of the District or to the Metropolitan Police Department *and not designated by the Mayor as a nonemergency vehicle;* or

(B) To other departments or officials of the District and designated by the Mayor as an emergency vehicle.

*Id.* § 1–1211 (emphasis added).

In particular, the parties and the court considered the relevance of the further definition of "emergency vehicle"[5] contained in General Order No. 301.3 and the possible consequent importance of whether or not the officer had turned on the siren. The definition reads:

1. *Emergency Vehicles*—For the purpose of this order an emergency vehicle is defined as a departmental vehicle equipped with, *and actually operating,* the below listed warning devices in compliance with the provisions of this order.

---

**3.** Abney is both an appellee and a cross-appellant. His cross-appeal challenges: (1) the sufficiency of the evidence to support the special verdict of the jury that the police car was an "emergency vehicle" within the meaning of D.C. Code § 1–1211(5) (1987), and (2) the trial court's allowance of a credit for medical expenses paid by the District against the judgment. It is not entirely clear why Abney has appealed on the first issue given that he won a judgment of $500,000 on a theory of simple negligence. The appeal may have been designed to preserve the issue in the event we ruled in the District's favor on its appeal of the denial of its motion for JNOV. In any event, our setting aside of the

main judgment for a new trial obviates any need to rule on these issues. With respect to the first issue, Abney is receiving, if not a JNOV, at least the new trial he sought. With respect to the second issue, Abney's arguments principally deal with matters of timing and proof, which may be resolved on remand.

**4.** No argument is made that liability of the District could ensue apart from this provision.

**5.** None of the parties appears to contend that the officer was not engaged in an "emergency run."

a. Siren.

(Emphasis added.)

The trial judge ultimately instructed the jury that

the issue of what constitutes an emergency vehicle on an emergency run is governed by statutes and regulations [which "implement the applicable statutes"]. . . .

In particular, the Metropolitan police officer can be considered to be in an emergency vehicle on an emergency run only where, one, he believes he should proceed expeditiously in pursuit of an actual or suspected violator of the law and, two, *the officer is driving in an emergency vehicle with both the over head lights and siren activated.*

.    .    .    .    .

... If you find that [both of the above conditions have been met, then] Officer Mattiello's actions must then be measured against a standard of gross negligence.

(Emphasis added.)

Pursuant to this instruction, the trial court presented several special verdict questions to the jury. Among them were: "Do you find that the scout car driven by Officer Mattiello was an emergency vehicle on an emergency run on April 28, 1984?" (Answer, "Yes"); "If your answer is 'Yes' that it was an emergency vehicle on an emergency run, do you find the District of Columbia grossly negligent and its gross negligence was a proximate cause of the accident?" (Answer, "No"); "If the answer is 'No' do you find the District of Columbia negligent and its negligence was a proximate cause of the accident?" (Answer, "Yes"). The apparent theory of the instructions was that the District would not be liable for any actions of the police offi-

cer while the police car was "an emergency vehicle on an emergency run" by reason of the activation of the siren unless the officer was otherwise grossly negligent. Under this theory, however, the decision to initiate the chase was necessarily made prior to the activation of the siren, that is, when the police car could not have been "an emergency vehicle on an emergency run" within the definition of General Order No. 301.3, and the making of that decision was therefore governed by an ordinary negligence standard.[6]

### B

The District argues on appeal that the trial court committed error in instructing the jury that General Order No. 301.3 implements D.C.Code § 1–1211 (1987) and that a vehicle must have its siren activated to be "an emergency vehicle." In particular, the District asserts that the decision to pursue was within the scope of the "arising out of the operation" proviso of section 1–1212 and that it too was therefore subject to review under a gross negligence standard.[7]

Plaintiffs' contrary argument, adopted by the trial court, focuses on the Code's definition of an "[e]mergency vehicle" as a vehicle "assigned ... [t]o the ... Metropolitan Police Department *and not designated by the Mayor as a nonemergency vehicle* " (emphasis added). By providing in General Order No. 301.3 that a vehicle is an emergency vehicle only when equipped with "and actually operating" a siren, the argument goes, the Mayor "designated" as a nonemergency vehicle any vehicle with the siren not activated. We cannot agree.

The purpose of General Order 301.3 "is to establish the policies and procedures rel-

---

**6.** Indeed, under the theory at trial, this standard would apply to any action or inaction before the time of the actual activation of the siren. The jury's answers to the special verdict questions are ambiguous as to the basis for its findings. Given the instructions, the finding of no gross negligence could relate solely to events occurring after the activation of the siren and not encompass, for example, any delay in its activation or the decision to pursue itself. Hence, we

cannot simply reverse outright and order a judgment in favor of the District, rather than leaving open the possibility of a new trial.

**7.** The District's opposition at trial to the court's instruction that General Order 301.3 implements the Code, although less than entirely lucid, was sufficient, we think, under all the circumstances, to preserve the point on appeal.

ative to the operation of departmental vehicles as authorized 'emergency vehicles', the proper use of emergency warning devices, and the guidelines for initiating and conducting vehicular and fresh pursuits." The Order essentially serves the purpose of an internal operating manual. It makes no mention of section 1–1212 nor does it in any other manner purport to implicate the District's waiver of governmental immunity. "Agency protocols and procedures, like agency manuals, do not have the force or effect of a statute or an administrative regulation. Rather, they provide officials with guidance on how they should perform those duties which are mandated by statute or regulation." *Wanzer v. District of Columbia,* 580 A.2d 127 (D.C.1990). Moreover, the Order itself expressly states that its definitions are only "[f]or the purpose of this order." Finally, although it is not necessarily controlling, we note that the Order appears to be unpublished. *Cf. Rorie v. District of Columbia Dep't of Human Resources,* 403 A.2d 1148, 1153 (D.C. 1979) (noting that the District of Columbia Administrative Procedure Act, D.C.Code §§ 1–1501 to –1542 (1987), requires "rules" to be published and holding a Department of Human Resources "Manual of Policies and Procedures" ineffective because not published).[8]

■ Given the explicit proviso of section 1–1212 and the structure and wording of the General Order itself, we do not think that the Order creates an expansion of the liability of the District such as plaintiffs seek to impose. *Cf. Morgan v. District of Columbia,* 468 A.2d 1306, 1317–18 (D.C. 1983) (en banc) (Metropolitan Police Department "general orders" cannot create a special duty to a protected class). Accordingly, we hold that the trial court erred in

limiting the definition of "an emergency vehicle" to a police car "with both the over head lights and siren activated." To the contrary, the statutory definition can only be construed to encompass the entire chase by the police officer of the BMW after the sideswiping incident.

■ Furthermore, we agree with appellant District of Columbia that the proviso, at least on the facts here, encompasses the decision to pursue as well.[9] Section 1–1212 of the District of Columbia Code states that "in the case of a claim *arising out of the operation* of an emergency vehicle on an emergency run the District shall be liable only for gross negligence" (emphasis added). Operation of a vehicle necessarily entails a decision to operate and, indeed, any harm could directly result only from the operation itself. A metaphysical distinction between actual operation and a roughly contemporaneous and perforce swift decision to operate would cut the concept too fine and could significantly cripple the limitation expressly incorporated in the District's waiver of governmental immunity provided for in D.C.Code § 1–1212 (1987). An interpretation of the phrase "arising out of the operation" to include contemporaneous decisions to operate is further appropriate given generally that waivers of immunity are to be read narrowly. *Cf. Hall v. Washington Metro. Area Transit Auth.,* 468 A.2d 970, 972 (D.C.1983).

*Reversed and remanded.*

---

**8.** Indeed, the one rule that has been published in the District of Columbia Register, 18 DCMR § 712.4 (1987), clearly implies that an "emergency vehicle" does not cease to lose that status when its siren is not actually operating. Section 712 is entitled "Audible and Visual Signals" and states in subsection 4:

Whenever an emergency vehicle is equipped with a siren, the siren shall not be used except when the vehicle is being operated in response to an emergency call; or in the imme-

diate pursuit of an actual or suspected violator of the law, in which case, the driver of the vehicle shall sound the siren when necessary to warn pedestrians and other drivers of the approach of the vehicle.

**9.** Indeed, on a record such as that presented here, we would have considerable doubt that a reasonable jury could make a finding of gross negligence in the decision to pursue.