**DISTRICT OF COLUMBIA, Appellant,**

**v.**

**Kevin HENDERSON, Sr.,
et al., Appellees.**

**No. 95–CV–1453.**

District of Columbia Court of Appeals.

Argued Feb. 23, 1998.
Decided April 30, 1998.

Paul A. Hemmersbaugh, with whom Ronald S. Flagg, and Charles L. Reischel, Deputy Corporation Counsel, and Donna M. Murasky, Assistant Corporation Counsel, Washington, DC, were on the brief, for appellant.

Gerald I. Holtz, Washington, DC, with whom Crystal S. Deese, Alexandria, VA, was on the brief, for appellees.

Before STEADMAN, FARRELL and REID, Associate Judges.

STEADMAN, Associate Judge:

In this case, we are asked to determine whether the District of Columbia can be held liable for the collision between a civilian vehicle occupied by appellees and two police cars on an emergency run. We reverse the judgments in favor of appellees because they failed to demonstrate that the police acted with "gross negligence," as required by D.C.Code § 1–1212 (1992) and more particularly defined in our recent decision in *Dis-*

*trict of Columbia v. Walker,* 689 A.2d 40 (D.C.1997).

**I.**

Two Metropolitan Police Department (MPD) cruisers, responding to a "Code One" emergency, ran a red light and struck a car carrying appellees Kevin Henderson, Sr., and his two children, Kevin Jr. and Rheana. The appellees sued the District for injuries they sustained in the collision. A jury returned a verdict for the appellees in the amount of $120,000, of which $100,000 represented Henderson's damages and $20,000 represented those of his two children. The District moved for judgment notwithstanding the verdict (JNOV), or, in the alternative, for remittitur or a new trial. The trial court denied the motion for JNOV but granted a new trial on the grounds that the $100,000 awarded to Henderson "shock[ed] the conscience of the Court and [was] so inordinately large as obviously to exceed the maximum limit of a reasonable range." [1] The trial court rescinded its grant of a new trial, however, when Henderson accepted a remittitur of his damages to $50,000.

On appeal, the District argues that the trial court should have granted its motion for JNOV as to all three plaintiffs because the evidence was insufficient to show gross negligence.

**II.**

When reviewing the denial of a motion for JNOV, we view the facts in the light most favorable to the appellees and reverse "only if no reasonable juror could have reached the verdict." *Walker, supra,* 689 A.2d at 42 (quoting *Kane v. Ryan,* 596 A.2d 562, 564 (D.C.1991)). Accordingly, the following presentation of facts is in the light most favorable to Henderson and his two children.

The accident occurred at about 5:30 p.m. on Saturday, December 12, 1992, as Henderson drove the children home from a Christmas party. The conditions were rainy

and "getting dark," and Henderson activated his headlights. The streets were wet from the rain, and there was testimony at trial that the stretch of road in question may have been particularly slippery in wet weather because of oil deposits on the asphalt. Henderson drove his gray 1987 Jaguar west on V Street, N.E., and prepared to make a left turn onto Bladensburg Road. Bladensburg is a major six-lane road, with three lanes in each direction. Its intersection with V Street is controlled by traffic lights, and Henderson had the green light. When he entered the intersection, Henderson was not aware of two MPD cruisers approaching him from the left on Bladensburg Road.

The cruisers were responding to a Code One emergency call to assist motorists who were trapped in their vehicle after an accident near the intersection of Bladensburg Road and South Dakota Avenue, N.E. Officer Nathaniel Davis drove the first of the two police cars. He activated his emergency sirens and flashing lights, and he also turned on his high-beam headlights. Davis was driving at approximately thirty to thirty-five miles per hour. That stretch of Bladensburg Road had a speed limit of twenty-five miles per hour, but Officer Davis knew that police vehicles are allowed to exceed the speed limit in an emergency.[2]

As Davis approached the intersection, other cars traveling in his direction were stopped for a red light. A traffic regulation allows police cars on emergency runs to proceed through red lights, "but only after slowing down as may be necessary for safe operation." 18 DCMR § 2002.2(b). MPD General Order 301.3 went further than the regulation and required each police vehicle on an emergency run to come to a complete stop before attempting to proceed through a red light. Nevertheless, despite the regulation and General Order, the latter of which Davis thought controlling, he did not apply his brakes until he had reached the crosswalk before the intersection of Bladensburg and V and presumably saw Henderson. At that

---

**1.** The trial court found that the $10,000 awarded to each of the two Henderson children was not unreasonable and allowed those judgments to stand.

**2.** *See* 18 DCMR § 2002.2(c) (1995). An internal police guideline, MPD General Order 301.3, also allows police vehicles on emergency runs to exceed the speed limit by up to ten miles per hour.

point, he applied his brakes but was not able to avoid a collision.

Davis struck the left front headlight and quarter panel of Henderson's Jaguar. The police officer in the second cruiser also was unable to stop and rear-ended Officer Davis's cruiser. One of the two police cars then struck the Henderson car again, damaging the left rear quarter panel, brake light, and trunk lid. At trial, Henderson characterized his car as a "total loss."

The appellees, as well as the two police officers, were transported by ambulance to local hospitals. The two Henderson children were examined and released promptly. They did not appear to sustain any physical injuries. Doctors x-rayed Mr. Henderson's back, shoulder, and leg and determined that he had no fractures, but he remained in the hospital under observation for two days and continued to see a physical therapist for about one month to relieve his neck and back pain. He did not return to work for approximately six weeks after the accident.

### III.

■ The District of Columbia cannot be held liable for claims arising out of the operation of a police car on an emergency run unless the officer driving the car acted with gross negligence. *See* D.C.Code § 1–1212. We explained the concept of gross negligence in *Walker, supra,* 689 A.2d at 40, which also arose from an accident involving police vehicles on an emergency run.

> [T]he term "gross negligence" in § 1–1212 requires such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others. This standard has been held to connote that the actor has engaged in conduct so extreme as to imply some sort of bad faith. Where ... there is no evidence of subjective bad faith on the part of the actor, the extreme nature of the conduct may be shown by demonstrating that the actor acted in such disregard of a risk "so obvious that [the actor] must be

taken to be aware of it and so great as to make it highly probable that harm would follow."

*Id.* at 44–45 (quoting 3 STUART M. SPEISER ET AL., THE AMERICAN LAW OF TORTS § 10:2, at 361 (1986)) (other citations omitted). With that standard in mind, when reviewing a challenge to the sufficiency of the evidence,

> the appropriate inquiry is whether, given the balance of factors in this case, a reasonable juror could conclude that the conduct of the MPD officers so grossly deviated from the conduct required under the circumstances as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others.

*Walker, supra,* 689 A.2d at 46.[3]

■ We think that no reasonable juror could find gross negligence, as we have defined the concept, in the police officer's conduct here. Officer Davis crossed an intersection on a legitimate Code One emergency at only five to ten miles per hour above the speed limit, with his emergency lights blinking and sirens blaring. The evening was dark enough that other vehicles, including Henderson's, had their headlights on; Davis went one step further and activated his high-beam headlights. Additionally, Davis applied his brake as he entered the intersection. It is regrettable that the officer did not avoid the crash, but his conduct simply did not reflect "such an *extreme* deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." *See Walker, supra,* 689 A.2d at 44 (emphasis added).

Especially in light of *Walker,* the officer's conduct cannot constitute gross negligence. In *Walker,* we held that the police were not grossly negligent in continuing to chase an underaged driver through red lights onto a parkway, where they reached speeds of approximately ninety miles per hour. 689 A.2d at 43, 47–48; *see also District of Columbia v. Banks,* 646 A.2d 972, 983 (D.C.1994) (Farrell,

---

**3.** The appellees suggest that the *Walker* standard is too strict, but, as a division of this court, we are bound by the *Walker* definition of gross negli-

gence. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

J., concurring) (concluding that the police were not grossly negligent in pursuing stolen car that travelled at fifty to eighty miles per hour past an elementary school and through several red lights). Davis, in contrast, acted with relative prudence by driving at only five to ten miles per hour above the speed limit on a six-lane thoroughfare, with his sirens, flashing lights, and high beams activated.

A finding of gross negligence, if such standard is to be meaningfully distinguished from simple negligence, must demand serious aggravating factors in the conduct of the police officer beyond those necessary to establish simple negligence in the first place. *See Walker, supra,* 689 A.2d at 45 (noting that simple negligence is a "base point from which the magnitude of deviation can be assessed for purposes of the gross negligence inquiry"); *see also Banks, supra,* 646 A.2d at 983 (Farrell, J., concurring). No such aggravating factors are present in this case. Driving up to ten miles per hour above the speed limit was not an aggravating factor under these circumstances, because traffic regulations allow police officers on emergency runs to speed. 18 DCMR § 2002.2(c).[4] The same regulations also allow officers to drive through red traffic lights in emergencies. 18 DCMR § 2002.2(b); *see also Banks, supra,* 646 A.2d at 983 (Farrell, J., concurring) (noting the police privilege to speed and run red lights in emergencies).

■ Nor was it a sufficient aggravating factor for Officer Davis to violate MPD General Order 301.3, which provided that all emergency vehicles should stop before proceeding through red lights. We explained the significance of the same General Order in *Abney v. District of Columbia,* 580 A.2d 1036, 1040–41 (D.C.1990). "The Order essentially serves the purpose of an internal operating manual. It makes no mention of section 1–1212 nor does it in any other manner purport to implicate the District's waiver of governmental immunity." *Id.* at 1041; *cf.*

*Banks, supra,* 646 A.2d at 983 (Farrell, J., concurring) (emphasizing that the same General Order "is not itself a regulation whose violation by itself may support a finding of negligence, let alone gross negligence"). Nor could the General Order override in this regard the requirement contained in 18 DCMR 2002.2(b). That latter provision set forth the applicable objective standard by which gross negligence could in the first instance be measured, regardless of Davis's own subjective views. Davis's failure to heed the General Order does not support a finding of gross negligence under these circumstances.

It is, of course, true that the relevant traffic regulation required the police officer to proceed through the red light "only after slowing down as may be necessary for safe operation," that the speed limits are subject to similar qualifications, that the roadway was slick from rain, and that it was getting dark. But these are the garden variety considerations that are needed to establish simple negligence in the first place. They cannot suffice to support the kind of finding *Walker* requires for gross negligence.

*Reversed.*[5]

---

4. MPD General Order 301.3(I)(B)(5) provides that, on most emergency runs, "no vehicle shall be operated at a speed *greater* than 10 miles per hour in excess of the posted or prima facie speed limit...." (Emphasis added.) Officer Davis's speed complied with this requirement.

5. The District also argues that Henderson failed to establish a prima facie case because he did not present expert testimony as to the applicable standard of care and that the trial court gave an erroneous jury instruction. In light of this disposition, we *do not reach and express no opinion* on these additional arguments.