Patricia DUGGAN, et al., Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 98–CV–199.

District of Columbia Court of Appeals.

Argued en banc Sept. 19, 2002.
Decided Oct. 14, 2005.

William G. Kelly, Jr., for appellants.

Donna M. Murasky, Senior Legal Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time, and Charles L. Reischel, Deputy Corporation Counsel at the time, were on the brief, for appellee.

Before WASHINGTON, Chief Judge,* TERRY, SCHWELB, FARRELL, WAGNER,** RUIZ, REID, and GLICKMAN, Associate Judges, and BELSON and STEADMAN, Senior Judges.***

PER CURIAM:

Appellants Ellen Duggan and Francis Duggan, individually and as parents and natural guardians of Patricia Duggan, a minor, sued the District of Columbia (the District) for damages for personal injuries their daughter sustained when a youthful driver (Allen Butler) struck her car while being chased by a vehicle driven by a the District of Columbia police officer. The case was tried by a jury, which deadlocked. The trial court then granted the District's renewed motion for judgment as a matter of law, concluding that no reasonable juror could find that the police officer was grossly negligent, the standard required for the imposition of liability upon the District under the circumstances.

A division of this court reversed, holding that the trial court had erred in granting judgment for the District as a matter of law. The court concluded, in part, that "a rational juror could reasonably have found the police officer grossly negligent in conducting the chase" that led to Patricia Duggan's injuries. *Duggan v. District of Columbia*, 783 A.2d 563, 570 (D.C.2001). The court subsequently granted rehearing en banc. *Duggan v. District of Columbia*, 797 A.2d 1233 (D.C.2002). Upon reconsideration, we reinstate the conclusion of the division stated above, and incorporate herein parts I and II of the division's opinion, published at 783 A.2d at 565–70. However, in place of part III of the division opinion (783 A.2d at 570–72), we provide the following analysis in which we reject appellants' threshold argument that a jury question existed as to whether the police officer was on an "emergency run"—hence whether the gross negligence standard governed his conduct—when the injury occurred. On the evidence presented, we hold that any reasonable juror would have to find that the officer's pursuit of Butler, in the course of which Patricia Duggan was injured, was an emergency run within the meaning of D.C.Code § 2–411(4) (2001). *See, e.g., Brown v. National Acad. of Sciences*, 844 A.2d 1113, 1118 (D.C.2004) (quoting Super. Ct. Civ. R. 50(a)) (judgment may be granted as a matter of law if, "when the evidence is viewed in the light most favorable to the opposing party, there is 'no legally sufficient evidentiary basis for a reasonable jury to find' for the non-moving party."). Consequently, upon retrial of the case, the issue of the

---

* Chief Judge Washington was an Associate Judge at the time of oral argument. He became Chief Judge on August 6, 2005.

** Judge Wagner was Chief Judge of this court at the time of oral argument. Her status changed to Associate Judge on August 6, 2005.

*** Judge Steadman was an Associate Judge of the court at the time of oral argument. His status changed to Senior Judge on October 18, 2004.

District's liability will be determined by application of the gross negligence standard.

■ D.C.Code § 2–412 (formerly § 1–1212 (1992)) constitutes a waiver of governmental immunity by the District of Columbia for claims of personal injury or death resulting from the negligent or wrongful operation of a District vehicle by a District employee acting within the scope of his employment. The statute, however, expressly limits the waiver by prescribing that "in the case of a claim arising out of the operation of an emergency vehicle on an emergency run the District shall be liable only for gross negligence." Interpreting this limitation, we have explained that " 'generally ... waivers of immunity are to be read narrowly,' " *District of Columbia v. Walker*, 689 A.2d 40, 42 (D.C. 1997) (quoting *Abney v. District of Columbia*, 580 A.2d 1036, 1041 (D.C.1990)), and that "[t]he necessary corollary to this rule is that limitations on waivers of immunity, such as the gross negligence provision in [§ 2–412], are to be read broadly." *Id.*

From these principles, we think it follows that the legislature also meant the concept of an "emergency run"—the event that triggers the heightened proof requirement of gross negligence—to be understood broadly. And, in fact, the statute defines the term expansively. Section 2–411(4) (formerly § 1–1211(4)), as relevant here, defines an "emergency run" to mean "the *movement* of a District-owned vehicle ... by direction of the operator ... under circumstances which *lead the operator ... to believe* that such vehicle should *proceed expeditiously* upon a particular mission or to a designated location for the purpose of dealing with *a supposed ... emergency,* an alleged violation of a statute or regulation, or other incident requiring emergency action" (emphases added). Thus, for one thing, the "movement" of the vehicle upon

a mission or to a location entails no notions of a "chase" or a "hot pursuit"; so long as the operator is "proceed[ing] expeditiously" in response to what he believes is an emergency, he is on an emergency run. Further, and more importantly, the circumstances leading the operator to initiate the emergency run need not "reasonably" or "justifiably" do so. So long as they "lead the operator ... to believe" a "supposed emergency" requires the action, he is on an emergency run and his conduct enjoys the statutory protection against claims for ordinary negligence.

Appellants disagree. Without analyzing the statutory terms, they argue that before the District of Columbia may invoke the gross negligence standard, the Code's definition of emergency run requires resolution of factual issues such as whether the circumstances warranted a *reasonable* belief that the vehicle should proceed expeditiously. *See, e.g.,* Brief for Appellants at 20 ("the whole context of the [statutory] definition concerns whether a particular situation can reasonably be believed to require emergency response"). Nothing in the definition of an emergency run, or the waiver statute otherwise, supports that reading, which confuses the reasonableness of the operator's decision *under* the gross negligence standard with the question of whether that standard applies. For gross negligence to apply, all the statute requires is a genuine—an honestly held— "belie[f]" by the operator that he should proceed expeditiously on a mission or to a location in response to a "supposed emergency." The *justification* for the belief, by contrast, was meant to be evaluated under the determination of whether the operator was grossly negligent or not. *See Abney,* 580 A.2d at 1041 (statutory concept of emergency run encompasses both pursuit of a motorist by the police officer and the decision to pursue). The

language chosen by the legislature supports no other plausible interpretation.[1]

■ Applying these standards, we hold that any rational trier of fact would have to find that Officer Partman genuinely believed he should pursue Allen Butler expeditiously, and thus that he was on an emergency run. When Partman first saw the car driven by Butler, it was "driving erratically." As Butler proceeded through the stop sign at 40th and Brandywine Streets going south, his "vehicle jerked as though the driver had some problem driving or drinking or some problem with the car." The car jerked a second time as Butler turned west onto Albemarle Street from 40th Street, where Partman noticed that the driver "looked to be rather young." Partman called for a WALES check as he followed Butler, who turned north onto Wisconsin Avenue and stopped at a red light. When the light turned green, "[Butler's] vehicle jerked again," and Partman decided to pull it over "to see whether this person had a driver's license, ... kn[e]w how to drive the type of car, had been drinking, or what the situation was" in an area where danger was evident because "school was out [and] people were out there." Partman turned on his overhead lights and sounded his siren on and off, but instead of pulling over Butler "took off [at] a high rate of speed and went through a red light at Brandywine Street [and Wisconsin Avenue]" going north. Partman followed him through the red light while notifying his dispatcher that Butler was "running from me." He "blast[ed his] sirens" and kept his overhead lights on to "let the vehicles traveling east and west know that [an] emergency vehicle was going through the intersection." Partman believed this "to be an emergency" because "the vehicle was driving reckless enough that it was an emergency for [him] to go in the direction [Butler's car] was going." He caught up with the car after Butler plowed into Duggan's car at the intersection of Davenport and 41st Streets.

Contrary to appellants' argument, the fact that Partman answered "no" on cross-examination to whether he "consider[ed himself to be] on an emergency run in going after Mr. Butler" sheds no light on whether his belief and actions fit the statutory definition. Regardless of how Partman characterized those actions legally, they demonstrate in fact that he believed it necessary to proceed expeditiously in pursuit of Butler after seeing him "jerk" his vehicle several times, accelerate and go through a red light, and "run[ ] from" the signaling officer. Indeed, in context all Partman denied on the stand was that he had "chas[ed]" or "engaged in a high speed chase" of Butler, actions that are not required by the statute, as we have seen. Nor is it significant, as appellants contend, that police General Order 301.3 directs police officers not to engage in pursuits in order to effect a traffic stop. That injunction has bearing on whether Partman was grossly negligent, *see Walker*, 689 A.2d at 47 n. 13 ("[E]vidence that the police violated [General Order 301.3] was one factor that the jury could consider [in finding gross negligence or not]."), but it adds nothing to the determination of whether he was on an emergency run . in the first place—a question answered by applying the *statutory* terms to his conduct as shown by the evidence. *See id.* (the General Order "cannot expand the District's

---

1. There may, it is true, be circumstances where the issue of whether a vehicle operator was on an emergency run presents a jury issue, but they will arise only when evidence supports a claim that the operator did not in fact—or did not honestly—believe that he should proceed, or was proceeding, on a mission as defined by the statute. As will be apparent, that is not the case here.

liability beyond that authorized in the statute").

For these reasons, we direct a retrial only on the question of whether Partman was grossly negligent in the manner by which he conducted the emergency run. In answering *that* question, the jury may consider the reasonableness both of Partman's decision to pursue and the manner in which he did so.

*Judgment reversed; case remanded for a new trial.*

STEADMAN, Senior Judge, with whom SCHWELB, Associate Judge joins, concurring in part and dissenting in part.

I entirely concur with the court's conclusion that liability here must rest, if at all, on proof of "gross negligence" under D.C.Code § 2–412. However, I cannot agree with my colleagues that there was sufficient evidence to warrant the submission to the jury of the question whether the officer in this case committed gross negligence under that Code section.

I do not understand my colleagues to take issue with the concept of gross negligence as we defined it in the high-speed chase case of *District of Columbia v. Walker*, 689 A.2d 40 (D.C.1997). I will not rehearse that full discussion again, but we noted there that the concept requires "an extreme deviation from the ordinary standard of care," "conduct so extreme as to imply some sort of bad faith," and "such negligence as would shock fair-minded men [and women]." 689 A.2d at 44.

I do not see how any reasonable jury could come to such a conclusion on the record here. Officer Partman sought to stop the vehicle because he observed (correctly) that the driver appeared too young to be operating a vehicle and that he was doing so somewhat erratically. The pursuit lasted some twelve seconds, spanning some four blocks. At the time of the pursuit, the road was wet but it was daylight. Like much of the District, the neighborhood of the pursuit was both commercial and residential in character. Officer Partman drove through a red light and utilized his emergency siren and lights. Witnesses testified that both vehicles eventually exceeded the speed limit by up to thirty miles an hour; however, Officer Partman was traveling at a speed and a distance from Butler that apparently enabled him to stop his vehicle without becoming entangled in Butler's collision and without leaving skid marks on the road.

I do not deny that Officer Partman's judgment in commencing and continuing the pursuit for four blocks at high speed might be deemed faulty. But "[a] finding of gross negligence, if such standard is to be meaningfully distinguished from simple negligence, must demand *serious aggravating factors* in the conduct of the police officer beyond those necessary to establish simple negligence in the first place." *District of Columbia v. Henderson*, 710 A.2d 874, 877 (D.C.1998) (emphasis added).

At the heart of the statutory exemption is a recognition that the operation of motor vehicles in an emergency situation may require rapid decisions—here, whether to pursue and whether to cut off the pursuit—that in retrospect may be deemed flawed. But duration and distance surely are vital factors in determining liability under the statutory standard. In my judgment, to permit an officer to be found grossly negligent for engaging in a twelve second, four block pursuit of a vehicle that has responded to a siren by fleeing is simply inconsistent with the principle, identified by the court, that "limitations on waivers of immunity, such as the gross negligence provision in § 1–1212 [now

§ 2–412], are to be read broadly." *Walker*, 689 A.2d at 42. If this limited pursuit can be deemed grossly negligent, then virtually any pursuit would seem open to such a finding. I doubt that the enactors of § 2–412 intended such a result. I respectfully dissent.