**Larean DICKSON, Appellant**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 06–CV–236.

District of Columbia Court of Appeals.

Argued Sept. 24, 2007.

Decided Nov. 6, 2007 *.

John S. Kearns, with whom Harvey A. Kirk, Baltimore, MD, was on the brief, for appellant.

Mary T. Connelly, Assistant Attorney General, with whom Eugene A. Adams, Interim Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, were on the brief, for appellee.

Before FARRELL and RUIZ, Associate Judges, and NEBEKER, Senior Judge.

PER CURIAM:

The trial judge granted summary judgment to the District on appellant's suit for negligence arising from an intersection col-

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published, with slight modification, at the request of appellee.

lision between her car and a police car driven by Officer Flynn of the MPD. The judge concluded (1) that because appellant had "offered no evidence and no reason to question Officer Flynn's belief" that at the time of the accident he was on an "emergency run" within the meaning of D.C.Code § 2–411(4) (2001), her suit failed as a matter of law unless she could prove gross negligence, *see id.* § 2–412; and (2) that her proof on that issue was legally insufficient because it did not cite "aggravating factors in the conduct of the police officer beyond those necessary to establish simple negligence in the first place." *District of Columbia v. Henderson,* 710 A.2d 874, 877 (D.C.1998). We affirm.

■ As the trial judge recognized, appellant's opposition to the motion for summary judgment and statement of material issues in dispute both assumed the applicability of the gross negligence standard.[1] Although in her "Reply to ... [the] District['s] Reply" she sought to disavow that concession ("Officer Flynn was not on an emergency call at the time," J.A. 7), her reasoning appeared to substitute an *objective* test ("this was not an emergency situation" because Flynn did not "follow departmental procedure," J.A. 7) for the simpler inquiry mandated by the statute of whether Flynn *believed*—"genuine[ly]"—that he should proceed expeditiously on a mission. *Duggan v. District of Columbia,* 884 A.2d 661, 663 (D.C.2005) (en banc).[2] Hence, the trial judge can scarcely be faulted for concluding that appellant had pointed to "no evidence and no

reason to question Officer Flynn's belief" in this regard and that, indeed, she "concedes that the gross negligence standard properly applies" (J.A. 2). *See, e.g., Vessels v. District of Columbia,* 531 A.2d 1016, 1019 (D.C.1987) (in ruling on summary judgment motion, trial court reviews record "in the context of the legal and factual issues as framed by the parties").

■ Even assuming, however, that the issue of whether Flynn was on an emergency run is properly presented to us, we agree with the judge that no triable issue of fact exists concerning the "genuine[ness]" of Flynn's belief. Flynn stated in deposition that he had decided to respond immediately to the report of a traffic stop because "[g]enerally we are trained [that] ... if you hear an officer come out over the radio with a traffic stop, [with] more than one person in their vehicle, you respond to the location" if there is a risk that "he's outnumbered" and his "safety" may be endangered (J.A. 31, 35). Appellant offered no evidence to impeach Flynn's assertion that MPD officers are "trained" to respond expeditiously in such circumstances. Nevertheless, when prompted by this court at oral argument, appellant pointed to Flynn's testimony that he thought the emergency response would also be "a good [training] exercise" for the new police officer who was accompanying Flynn—the inference being, appellant says, that Flynn did not honestly believe an emergency run was necessary. Flynn, however, explained why he believed that an expeditious response to the radio call

---

1. See J.A. 19 (Opposition: Officer Flynn's actions in responding to a traffic stop by another officer "constitute[d] gross negligence"); J.A. 19 (Statement of Material [Issues of] Fact[ ]: "[w]hether ... Flynn's failure to activate his siren *in an emergency situation* while entering an intersection on a red traffic signal constitutes gross negligence" (emphasis added)).

2. *See* D.C.Code § 2–411(4) (defining "emergency run" to mean the movement of a District-owned vehicle "under circumstances which lead the operator ... to believe that such vehicle should proceed expeditiously upon a particular mission").

was required, and significantly, the internal police Crash Review Board, whose conclusions appellant otherwise approves, did not doubt his explanation—*i.e.,* that he had been genuinely "proceeding to assist with a traffic stop" (J.A. 44) or (in the words of his commanding officer) "attempting to expeditiously provide assistance to another officer" (J.A. 43) when the collision occurred. Given this evidence of "the circumstances that le[ ]d [Flynn] to believe" he should assist his fellow officer, a finding by a trier of fact that Flynn was merely feigning or staging an emergency run to train another officer would have rested on surmise. Altogether, on the issue of whether Flynn in fact believed that he was on an emergency run, and thus that the gross negligence standard governed the District's liability for his actions, the trial judge was correct that the evidence was "so one-sided that [the District had to] prevail as a matter of law." *Hill v. White,* 589 A.2d 918, 921 n. 8 (D.C.1991) (citation omitted). Appellant's bare assertion that a jury might have chosen to disbelieve Flynn is insufficient to create a genuine disputed issue of material fact. *See, e.g., Evans–Reid v. District of Columbia,* 930 A.2d 930, 940–41 (D.C.2007).

■ We reach the same conclusion regarding the evidence of gross negligence *vel non.* That standard, we have said, connote[s] that the actor has engaged in conduct so extreme as to imply some sort of bad faith. Where ... there is no evidence of subjective bad faith on the part of the actor, the extreme nature of the conduct may be shown by demonstrating that the actor acted in disregard of a risk so obvious that [the actor] must be taken to be aware of it and so great as to make it highly probable that harm would follow.

*District of Columbia v. Walker,* 689 A.2d 40, 44–45 (D.C.1997) (citation and internal quotation marks omitted). Here, as the District points out,

[T]he undisputed evidence showed that Officer Flynn exercised at least some care. ... He was driving about 30 miles per hours in a 25 mile per hour zone, only five miles per hour over the speed limit. He had turned the emergency lights on and was manually turning the siren on and off so that[, according to his deposition,] he could alert other drivers but at the same time hear police transmissions and other traffic.

Although the Crash Review Board faulted (and disciplined) Flynn for not slowing down in the intersection[3] and not sounding his siren continuously, these findings, without considerably more, do not constitute "serious aggravating factors in the conduct of the police officer *beyond* those necessary to establish simple negligence." *Henderson,* 710 A.2d at 877 (emphasis added). *Compare, e.g., Duggan v. District of Columbia,* 783 A.2d 563, 569 (D.C.2001) (*Duggan I*), *reinstated by Duggan II,* 884 A.2d at 662 (jury finding of gross negligence permissible where "[t]here was evidence that Officer Partman engaged in an automobile chase of a juvenile ... at speeds up to 60 miles per hour, on streets which were slippery and wet from rain and leaves, ... during a time when young people from the seven schools in the area were being dismissed for the day"), *and District of Columbia v. Hawkins,* 782 A.2d 293, 303 (D.C.2001) (finding of gross negligence permissible where police engaged in pursuit at speeds up to ninety miles per hour "over nearly a mile of city streets in a densely populated urban neighborhood, near schools and into an intersection

---

**3.** Flynn stated in his deposition that he had stopped for "a brief second, long enough to feel the vehicle stop" (J.A. 32) before entering the intersection.

known to be crowded during rush hour"), *with Henderson,* 710 A.2d at 876 (no gross negligence as a matter of law where police officer responding to emergency call traveled "at only five to ten miles per hour above the speed limit, with his emergency lights blinking and sirens blaring," and "applied his brake as he entered the intersection"; this was not " 'such an *extreme* deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others' " and constitute gross negligence) (quoting *Walker,* 689 A.2d at 44; emphasis by *Henderson).*

*Affirmed.*